Case number 18-7047 Anatolie Stati, et al. v. Republic of Kazakhstan, et al. Mr. Franklin for the appellate, Mr. Berger for the appellate. Good morning, Mr. Franklin. Good morning. Thank you, your honors, and may it please the court. In my limited time today, I would like to focus on two clear legal errors made by the district court, the first of which undermined the basic fairness, upheld an action that undermined the basic fairness of the underlying arbitration proceeding, and the second of which undermined the basic fairness of this confirmation proceeding. First, the court held, incorrectly held, and erred as a matter of law in holding that the ground for non-enforcement set forth in Article 5.1.D of the New York Convention was not met, even though the arbitral institution, the SCC, unilaterally commandeered Kazakhstan's right of appointment of its own arbitrator without any prior notice, either in its communications or in its rules. When you say commandeered without any prior notice, that's a pretty strong statement. Yes. There was a mailing to your client, correct? There was a mailing, and the mailing said, file an answer, and the answer should contain comments on two things. It said it should contain comments on the other side's proposal for selecting the chairperson and the seat of arbitration, neither of which, by the way, the SCC accepted, did not say that we needed to make an appointment of an arbitrator, and there is, in our view, I've scoured the rules. How can you appoint a chairperson without an arbitrator being appointed by each of the two sides? As it was happened in this case, the board ended up appointing the chairperson on its own. It did not accept the other side's proposal. The point there, Your Honor, is that these things preceded, necessarily preceded, the selection of the arbitrator under the rules and under the communications. All the rules said was, all the communications said was, file an answer. The rules said the answer should contain, if applicable, an appointment of an arbitrator, but it was not applicable here because there was no communication ever from the board that made it applicable, and there was nothing in the parties. How can you have an arbitration without an arbitrator? I mean, of course it's applicable. The way the rules work, Your Honor, is that if the answer is not filed, then the rules allow the board to appoint an arbitrator for a party, but it must first give the party notice and a period of time, and that's Rule 13.3 of the SEC's rule. It has to give the party notice and a time for appointing the arbitrator. You're correct. The arbitration can't proceed without that. The question here was, did Kazakhstan have any notice that it was under a mandatory obligation? What answer did Kazakhstan provide? It did not. It did not have counsel at that time. It did not end up providing an answer to our knowledge in the case, so that allowed the arbitration to proceed under the rules, and what should have happened, Your Honor, is at that point the board should have set a deadline, should have decided the things under consideration, how many arbitrators there are going to be, how the chairman's going to be appointed, chairperson's going to be appointed, and the seat of arbitration, and then notify Kazakhstan that it was then under a deadline to appoint an arbitrator, and none of that happened, and the result of that, Your Honor, is under Article 5.1b of the convention, the arbitral authority was not in accordance with the agreement of the parties and therefore could not be confirmed in this proceeding, and this is not a minor thing. So the argument you're pressing before us is a focused, rule-bound one about, I guess it's Rules 9 through 13 of the Stockholm Rules, and the need for post-pleading negotiations about appointment and deadlines and such, but the argument that you made on this point, that your predecessor counsel made on this very point to the tribunal was quite different. It was simply an argument that no rule specifies a time limit, and 21 days and even 35 days is unreasonably short. I think it's the same argument plus the unreasonably short time frame. We were making that. It's the same argument except when you presented it to the tribunal, it was just a highly discretionary, you know, there's no rule governs and the deadline that was set was too short. The argument you're making here is a very precise, focused one under specific rules, but that. The ultimate end of the argument, Your Honor, is no rule governs. There was no rule here under which they could do. Well, the argument you're making here is that the appointment was made in violation of Rule 13. Yes. But that wasn't presented to the tribunal. So you're asking us to reverse or not confirm based on an argument about what Stockholm Rules mean, what Stockholm process rules mean that was never presented to the Stockholm arbitral tribunal. First of all, I think fairly considered, Your Honor, we did make that argument that their rules did not allow it. Now, the argument is maybe perhaps more focused here, but the ultimate question under the New York Convention is, was the arbitral authority in accordance with the agreement of the parties, which in this case incorporated the rules? It was not, and the district court pointed to no rule. The Swedish court likewise pointed to no rule that allowed the SEC to do what it did. Assume that I conclude you didn't present this argument to the tribunal. Is there any principle that would require us to reverse based on a legal argument about tribunal rules that could have been made to the tribunal but wasn't? I don't think so, Your Honor. Certainly, I think the other side in this case hasn't made that argument, so in effect they have made that objection as well. That's a question I have for them, but I mean you're asking us to muck around in interpretation of tribunal rules, and I'm not sure we would lightly do that in a case where that tribunal had no opportunity to present. Well, the tribunal certainly was presented with the objection, and they misconstrued it in our view as a challenge to the arbitrator's impartiality of qualifications. So we really didn't have the opportunity that Your Honor is suggesting that we might have had to argue this. They said when they approved. You came in. The arbitrator had been appointed, and you thought that was improper, and your predecessor counsel was lined up and went before the tribunal and said this is improper, and you made the general fairness argument that I mentioned, and you made a different argument about a conflict of interest. I don't know that we made the conflict of interest per se, Your Honor, but we did certainly say the rules don't allow it. I would, by the way, Your Honor, I'd like to move to the fraud argument, but I would like to take additional questions, but I don't want to get into my rebuttal time. The fraud argument is the second argument I'd like to deal with today, but if the court has further questions, I'd be glad to entertain them on the appointment issue. Why don't you move on to the next argument? Okay. The second point is nearly two years before the district court, and I see I'm in my rebuttal time, if I might have a moment. You can proceed. Nearly two years before the district court ever ruled on the studies petition to confirm, the court incorrectly prevented Kazakhstan from even presenting the evidence, even allowing it leave to present the evidence to the court of newly discovered evidence of fraud as an additional ground for non-enforcement under Article 5 2B of the convention. The court erred, we believe, as a matter of law, when it held without even allowing Kazakhstan to present the evidence that no evidence that Kazakhstan could ever present would ever substantiate its allegations, and here I'm quoting from our motion for leave, that the $999 million awarded to petitioners for the LPG plant was a direct result of the fraud, that's at page JA 337, and that the study's parties' fraud infected the $199 million number relied on the tribunal to award compensation for the LPG plant, that's 370. The court further compounded that mistake by adhering to its erroneous ruling, even when Kazakhstan presented copious evidence that the futility ruling was incorrect, and did so only 13 days after briefing on the motion for leave had concluded, which was still nearly two years before the court ruled on the petition to confirm. The net result of all of this, Your Honor, was to deprive Kazakhstan of its right under Article 5 of the convention and the implementing statute to present all available grounds for fraud, and I would add, by the way, that the district court at page 767 of the joint appendix cited this court's decision in Enron, Nigeria in its decision on the motion for reconsideration. One thing that that court case holds, Your Honor, is that a defense under Article 5 of the New York Convention of Public Policy Defense is subject, cannot be waived, and cannot be forfeited, and that the court must always consider it even for the first time on appeal. The reason the court held is because the court is otherwise becoming the tool of the fraud, in essence, by allowing the fraud to be confirmed, and in this case we were never allowed our opportunity to present our evidence, and I would like to just emphasize the modest nature of the request that we're making here. All right. I'd like you to conclude because your time is up. Yes. The only request we're making here is to allow us to present the evidence. We're not asking the court to find the fraud. We're asking that we should be allowed to present evidence that a foreign court has found constitutes at least a prima facie case that the award was procured by fraud. We were denied that opportunity. We ask that we be given that opportunity. All right. Thank you. We'll give you a couple minutes. Thank you. Good morning, Your Honors. James Berger for the petitioner. I'd like to address the issues as they were raised by my colleague. First on the arbitrator issue, Your Honor, Judge Katz, I think it is correct that if that the law would support the notion that if a certain argument against jurisdiction in the arbitral tribunal or a violation of the arbitral rules were not first presented to the tribunal, those would not be a cognizable objection to recognition of the award. Now, we didn't brief that in our briefs in the district court or here, and I'm not prepared to So why shouldn't we hold you to forfeiture of the forfeiture argument? Well, we didn't argue it. We didn't argue it here, and so you probably could hold that. Can we talk about the merits of that issue? As I understand the chronology, the relevant contracts were terminated July 21st of 2010, and five days later your client filed its statement of claim or complaint, whatever the right term is, right? That's correct. It filed the request for arbitration on July 26th. The treaty that requires arbitration requires a three-month period in which the government is put on notice that this might be headed to arbitration, and they can either try to settle it or they can line up their ducks to figure out what are we going to do if we need to arbitrate it, which would seem to include thinking about appointing a member of the tribunal, and none of that happened. That didn't happen. Whether none of it happened I don't think is quite so clear. The record suggests that there were discussions that went on before the filing of the request for arbitration. Whether you can call those discussions a proper three-month negotiation period that you can say the treaty contemplates is probably something that we can debate over. But we did say that if you were to strictly apply that three-month period, a sovereign would be able to avoid arbitration indefinitely by simply committing new breaches. This was a long unfolding dispute, and one I think that the parties had been discussing and had been communicating with one another about. But you give notice of the intent to invoke arbitration, and then there's a three-month period in which the parties can either try to settle or prepare for a contested proceeding. That's what the treaty says, and if the court looks at the BG versus Argentina decision... And instead of that, you have the first formal invocation of arbitration is this letter that's written in English and sent to the government's justice department and says, hey, by the way, 21 days, tell us your arbitrator. Well, that's what the board did. We filed the request for arbitration in accordance with the SEC rules, and the board followed its own rules by sending communication to Kazakhstan and saying that a request for arbitration has been filed. You have this much time to file an answer, and if they were to look at Rule 5 of the SEC rules, they would see that, hey, that first communication put them on notice that this would be a three-member tribunal because the SEC board... It's a relevant treaty that, at a minimum, parties have 90 days to figure out how they're going to plan for this. Well, the tribunal figured out a way to cure that violation, and when that alleged violation was brought to the tribunal's attention... As to the possibility for settlement, but not as to the appointment issue. Not as to the appointment issue, but they did make an objection to the appointment of the arbitrator, and the tribunal addressed that as they thought fit in accordance with their rules, and the court's review of that issue, whether or not the SEC followed its own rules, Your Honor was talking before about the need for this court to start mucking around with local arbitration rules, and the review of its own treatment of those rules is a deferential review. But the New York Convention does flag composition as an issue. It's an issue. It is an issue, for sure. And when the court looks at what happened, and I appreciate Your Honor's concern about the potential that this sovereign was caught off balance, was caught off guard by their filing of a request for arbitration, but these issues were brought up before the tribunal. In terms of the cooling off period that was brought to the tribunal's attention as a potential jurisdictional defect, and Kazakhstan proposed a way to cure that defect. I'm rather surprised that your answer omits one important consideration, and that is that the article, what was it, 26? 26 of the treaty requires, the three-month period doesn't automatically begin with the filing of an arbitration request. The way I read that provision, it only begins when one party requests the three-month period. So if your client didn't request it, it's up to the country, in response, to request it. And that's what happened. They requested a three-month cooling off period, and the arbitration panel granted it. Am I right that one party has to request the three-month period? That would be the practical way that it would proceed. There's a dispute, and that's why I mentioned before, Judge Randolph, there were discussions going on, as I understand it, that the parties didn't just wake up one day and file an arbitration. There was a dispute that had been unfolding for some time. There had been discussions. Whether or not those discussions could be characterized as satisfying the three-month period, I think, is probably something that we could debate about. There's a comparable provision, believe it or not, in federal contracting law under the statute called the Miller Act. If there's a contracting dispute, you have to wait 30 days or 90 days, it's the same thing, before you can bring an action in court. Do you know how the courts handle that? Are you familiar with that? I'm not, Your Honor. What I do know, and if I've answered Your Honor's question sufficiently, I would just move to the point of saying that whether or not the three-month stay that was ultimately imposed was sufficient to cure any potential violation of Article 26 is something that is clearly, and I think unquestionably at this stage, subject to a deferential review in a New York Convention proceeding. This case is practically the same as Beezy v. Argentina. The Supreme Court in that case said that when we are confronted with questions concerning satisfaction of these procedural gateways to arbitration, the resulting judicial review is a deferential review. The Court made clear that a review has to take place. It needs to be a deferential review, but I think the record in this case is very clear that the District Court conducted that review and said this is what the Tribunal did. They imposed a three-month stay. They imposed that three-month stay at Kazakhstan's request, and Kazakhstan requested that three-month stay as a cure for the jurisdictional defect that it now is asking this Court to rely upon to find that there was not arbitral jurisdiction. So the Tribunal did what Kazakhstan asked it to do, and under the Supreme Court's holding in Beezy v. Argentina, that basically is the end of the story. The District Court looked at what it did and said applying a deferential review, that seems fine to us, and I think that it should be fine here on appeal as well. Just to touch briefly upon the fraud issue. I see my time is running out, and I do want to address that issue. What happened here is Kazakhstan came to the District Court in 2016 and said, we have come up with evidence that we think we can use to prove that this award was procured by fraud. And if you'll let us, we'll tell you all about it. And they described a theory of fraud which basically said we are going to show that there was false testimony given to the Tribunal, and that that false testimony resulted in this amount of damages being awarded to Kazakhstan. In connection with the expropriation of a particular asset that was among other assets that were expropriated. And the District Court said, well, the award says they didn't rely on any testimony in setting that value, so you don't have a fraud case, and I am not going to use this Court's resources to conduct a fraud trial when you haven't really articulated something that's cognizable. And then they went back and came in with a motion for reconsideration saying, no, you misunderstood us. Our fraud case is actually this, it's a bid fraud case. And the District Court properly said, I didn't misunderstand anything, I ruled on the paper that you gave me. And the motion for reconsideration by any standard articulates a different theory of fraud than the initial motion did. The District Court also said that the evidence that was being put forth on the motion for reconsideration had been in the possession of Kazakhstan for at least a year before they filed the motion. On what basis did the District Court make that statement, if I've recited it correctly? You've recited it correctly, Your Honor, and the District Court said that because the evidence was obtained through 28 U.S.C. Section 1782 proceedings that were conducted a year before. And they had that evidence, and I think when you look at the record of that motion and the motion for reconsideration, the only reasonable inference that you can make is that Kazakhstan chose not to put that evidence in with its initial motion. And then when that initial motion got denied, they said, well, I guess we better put it in now, because we got denied and this is our last bite at the apple. That would have been their third bite at the apple, by the way, because I think it's important to bear in mind, the Swedish Court heard this fraud case in its full glory, and they did not think that it was sufficient to recognize, to set the award aside. I see my time has elapsed, Your Honors. I'll be happy to answer any more questions that you may have otherwise. I'll conclude my submission. Thank you very much. Thank you, Your Honors. On the appointment issue, we believe that 258 of the Joint Appendix, we did say to the SEC that we were deprived of our right of appointment without our consent and without prior consultation. That is the same argument that we made below. It's the argument we're making today. The District Court rejected that argument on the ground that the rules told us that we needed to make an arbitral appointment. That is the decision that this Court is now reviewing. That decision was incorrect, because the Court did not identify, could not identify any rule that required us to make an appointment or gave us a deadline to make an appointment. The other thing I would note is on page 268... 258 is what I have too, and the argument is the rules don't specify a time period for filing the answer or appointing arbitrators. 21 or even 35-day time period is extremely short. Well, I'm talking about the first page. With all respect, the Republic feels constrained to object to its appointment without its consent or prior consultation and without having had an opportunity to select its own arbitrator. That's the objection. The other side, by the way... But none of the rules that you rely on, that you invoke in the Blue Brief are cited here. But that's the defense. That's the other side's argument as to why we had those things. They're saying we had those things because the rules gave it to us. The District Court accepted that. We say the District Court is wrong. Why didn't Article V control? It requires an answer, and the answer has to be, if applicable, to name and address... You say it's not applicable? Why? It wasn't applicable because there was no notice that we were under a requirement to appoint it. It wasn't applicable because there were issues that needed to be decided, such as the... And we got it for the answer. We didn't have counsel. And you got an extension. Well, they gave us an extension, and we still hadn't selected counsel. And what makes it applicable is that you have the right to select an arbitrator. But we didn't yet because the SEC hadn't even determined how many arbitrators there was going to be or the method for appointing them or the seat of arbitration. The next thing it would have done, we think, is it asked for us to comment on their proposals for those things. Then, what should have happened is... Where else besides Stockholm does the Stockholm Chamber of Commerce conduct arbitration? The other side, in fact, asked for Paris, Your Honor. And they were not granted Paris. They wanted the seat of arbitration to be Paris. They said that in their submission to the arbitration, and it was not selected. The point here is that there were things that needed to happen before the selection. What other ways are there to select one's arbitrator? First of all, it would be helpful to know the seat. It would be helpful to know whether that arbitrator is then going to select the chairperson. But there are places where it would be applicable. It would be applicable if the agreement between the parties said you need to appoint your arbitrator in your answer. What all the SEC should have done is it should have set a deadline for appointing the arbitrator, and it didn't. I would also add, by the way, Judge Cassis, on page 260, the other side said there is no procedure for challenging it. We didn't present this to the arbitral panel, because they're not going to rule on whether they were improperly constituted. And Article V doesn't require us to have done that, even though we did make an objection. I would just also want to note that Judge Randolph, on the cooling-off period, the investor is the one that is required to satisfy it. It's a mandatory requirement. It's not either party asks for it. It's a mandatory requirement, and it's jurisdictional. Only the investor is required to do that before instituting the arbitration to give us notice. Just look. I don't think there's no way that I read that. Only then. Here's what it says. Yes. It says, if the dispute cannot be, I'm reading Article 26-2, if such disputes cannot be settled according to the provisions of Paragraph 1 within a period of three months from the date on which either party to the dispute requested amicable settlement. So that strikes me as saying that either party can request a three-month period. Either party can make the request for amicable settlement, but it is the investor that has the mandatory requirement to wait before filing the arbitration. That's the next clause. The investor party to the dispute may choose to submit it for resolution. Only then can they choose to do that. So your client made a request for the three-month period, made the request to the arbitration panel, and it was granted. Not this three-month period, Your Honor. This is a mandatory period before the arbitration can continue, and we didn't make that request. In fact, it was the other side that preemptively filed. But when you did make the request midstream, you suggested to the tribunal that a three-month stay would solve your problem. We suggested it, but we did not say it would solve the problem. We said it was a practical solution. A practical solution, which suggests that... We went on to say, Your Honor, that notwithstanding that the jurisdictional objection could ruin the entire arbitration, and the way that was understood was, we're proposing a practical solution... You preserved an argument that, as a matter of jurisdiction, you need 90 days before the arbitration is begun. But you didn't link it back to the appointment issue. Not the appointment issue. I think it's relevant there by saying that that was one of the reasons why we ended up not having the ability to file answers. We hadn't selected counsel. They rushed the arbitration. Had there been the three-month period, things might have proceeded differently. But in terms of the cooling-off period, that's a separate argument. Finally, on the fraud, counsel on the other side said that we chose not to present our evidence to the district court. We were very express about what we were asking for in the district court. We were asking for leave to present the evidence. We were not saying we were presenting the evidence. We wanted leave to present it. That was what was denied. And then it was denied on the ground of futility. Then, on reconsideration, we showed the evidence that we wanted leave to present, and the court still adhered to its ruling, even after seeing the evidence. Evidence, by the way, that the London court found was a prima facie case of fraud. The Dutch court is going to be looking at it as well. We submit the district court here should and actually must look at that evidence. Thank you. Thank you. Case is submitted.
judges: Wilkins, Katsas, Randolph